**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | | |
|---|---|---|
| DAN BOGER on behalf of himself and others similarly situated, | : : : | |
| Plaintiff, | : : | |
| v. | : : : | Case No. |
| MATRIX WARRANTY SOLUTIONS, INC. d/b/a ELEMENT PROTECTION, and HARD TACK, INC. | : : : : | |
| Defendants. | : / | |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Dan Boger ("Mr. Boger") ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, Matrix Warranty Solutions, Inc. d/b/a Element Protection ("Matrix Warranty") hired the co-defendant, Hard Tack, Inc. ("Hard Tack"), who made telemarketing calls to a cellular telephone number of Mr. Boger for the purposes of advertising Matrix Warranty goods and services using an automated dialing system and a pre-recorded message.

3. Hard Tack made these calls pursuant to an agreement with Matrix Warranty, who hired Hard Tack to generate business through telemarketing. Matrix Warranty maintained interim control over the actions of Hard Tack during its performance under the agreement.

4. Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because automated telemarketing calls of the type involved here are routinely made in campaigns directed at thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

5. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6. Plaintiff Dan Boger is a resident of the state of Maryland.

7. Defendant Matrix Warranty is a corporate entity formed and registered in Nevada, maintaining its principal place of business at 3100 McKinnon Street, Suite 440, Dallas, Texas 75201. Matrix Warranty regularly solicits and conducts business in Maryland, and thereby avails itself of the protection of Maryland law.

8. Defendant Hard Tack, Inc. is a corporate entity formed and registered in Delaware, maintaining its principal place of business at 3300 South Dixie Highway, Suite 1-267, West Palm Beach, FL 33406. Hard Tack regularly solicits and conducts business in Maryland, and thereby avails itself of the protection of Maryland law.

**Jurisdiction and Venue**

9. This Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls that give rise to Plaintiff's claims were made into this District.

**The Telephone Consumer Protection Act**

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The National Do Not Call Registry</u>

12. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

14. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

17. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

4

**Factual Allegations**

18. Matrix Warranty provides extended warranty services to consumers.

19. To generate business through sales, Matrix Warranty relies on telemarketing.

20. However, Matrix Warranty's contact with the potential new customers is limited, and the telemarketing is conducted by third parties.

21. One of Matrix Warranty's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business by third parties.

22. Another of Matrix Warranty's strategies is the use of pre-recorded messages in its telemarketing to solicit business by third parties.

23. Matrix Warranty engages and relies upon the technology of recorded messages and related equipment and systems, because it allows for thousands of automated calls to be placed at one time. However, the telemarketing representatives acting for Matrix, who are paid by the hour, only talk to individuals who pick up the telephone and answer the calls.

24. Through this method, Matrix Warranty shifts the burden of wasted time to the consumers it calls with unsolicited messages.

<u>Calls to Mr. Boger</u>

25. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

26. Mr. Boger's telephone number, (703) 328-XXXX, is assigned to a cellular telephone service.

27. Mr. Boger placed his cellular telephone number, (703) 328-XXXX, on the National Do Not Call Registry more than five years ago.

28. Despite the registration of Mr. Boger's telephone number on the National Do Not Call Registry, Hard Tack placed automated telemarketing calls to him on at least the following dates:

    A. December 13, 2018

    B. December 18, 2018

29. On each of the occasions listed above, Mr. Boger answered the call and heard a lengthy pause and a click before anyone came on the line, which indicated to Mr. Boger that the call was made using an ATDS.

30. Furthermore, as discussed more below, the use of multiple Caller IDs by the same company indicates that the Caller IDs are cycled out by the callers, which is also indicative of automated dialing done through a computer.

31. Moreover, on the December 18, 2018 call, a pre-recorded message was used.

32. When the Plaintiff finally connected with a live individual on each call, he was solicited for Matrix Warranty.

33. Matrix Warranty, or individuals who held themselves out as Matrix Warranty representatives, also directly participated on the December 13, 2018 call, including individuals who identified themselves as "Reginald" and "Michael Davis" (who further identified himself as an "Authorization Manager").

34. Individuals using the names "Reginald Moore" and "Kristy" participated on the December 18, 2018 call.

35. The Caller ID that displayed on the December 13, 2018 telemarketing call was (276) 207-9869.

36. The Caller ID that displayed on the December 18, 2018 telemarketing call was (703) 263-8675.

37. Other individuals have complained about receiving solicitation calls from the same numbers:

> They just keep calling. I think it's about auto warranties. PITA!!! Caller: Female; Call type: Scam suspicion.

*See* http://800notes.com/Phone.aspx/1-276-207-9869 (last visited January 14, 2019).

> Scam they are calling everyday once you block them they use another number. Call type: Scam suspicion.

*See* http://800notes.com/Phone.aspx/1-276-207-9869 (last visited January 14, 2019). *See also* https://www.nomorobo.com/lookup/276-207-9869 and https://www.nomorobo.com/lookup/703-263-8675 (last visited January 14, 2019).

38. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

39. Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

40. Finally, the calls were without the consent of the called party. Mr. Boger contacted Matrix Warranty and Hard Tack prior to the filing of this lawsuit and did not receive any evidence that he consented to receive these calls.

### Matrix Warranty's Liability and its Arrangement with Hard Tack

41. For more than twenty years, the FCC has held that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any

7

violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

42. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

43. In that ruling, the FCC instructed that sellers such as Matrix Warranty may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

44. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

45. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

46. Matrix Warranty is directly liable for the Hard Tack telemarketing calls because it actively participated in those calls by participating in the actual calling, as described above.

47. By engaging Hard Tack to make calls on behalf of its agents to generate new business, Matrix Warranty "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

48. Moreover, Matrix Warranty maintained interim control over Hard Tack's actions.

49. For example, Matrix Warranty had absolute control over whether, and under what circumstances, it would accept a customer.

50. Furthermore, Matrix Warranty had day-to-day control over Hard Tack's actions, including the ability to prohibit it from using an ATDS to contact potential customers of Matrix Warranty. Matrix Warranty failed to make such an instruction to Hard Tack, and as a result, is liable for Hard Tack's conduct.

51. Additionally, Matrix Warranty exercised control in selecting the geographic locations where Hard Tack was to promote the products of Matrix Warranty, which included Maryland.

52. Matrix Warranty also gave interim instructions to Hard Tack by prescribing the volume of calls and the quantities of leads it would purchase.

53. Hard Tack transferred customer information directly to Matrix Warranty. Thus, the company that Matrix Warranty hired has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. As such, the company that Matrix Warranty hired is an apparent agent of Matrix Warranty.

54. Matrix Warranty was previously sued for the actions of third party telemarketers it hired, and as such was on notice that third parties, such as Hard Tack, were violating the TCPA on Matrix Warranty's behalf.

55. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

56. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

57. The classes of persons Plaintiff proposes to represent are tentatively defined as:

CLASS 1

All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Defendants' products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

MARLYAND TCPA SUBCLASS

All Maryland Residents to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Defendants' products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; (e) at any time in the period that begins three years before the date of the filing of this Complaint up to the date of trial and entry of judgment.

Excluded from the class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

58.     The class as defined above is identifiable through phone records and phone number databases.

59.     The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

60.     Plaintiff is a member of the proposed classes.

61.     There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

       a.     Whether Defendants violated the TCPA by using automated telemarketing to call cellular telephones;

      b.      Whether Defendants placed calls using an automatic telephone dialing system;

      c.      Whether Matrix Warranty is vicariously liable for the conduct of Hard Tack;

      d.      Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

      e.      Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

62. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class, arise out of the same common course of conduct by the defendants and are based on the same legal and remedial theories.

63. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

64. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

65. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for

small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

66. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

67. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### Causes of Action

#### Count One:
#### Violation of the TCPA's Automated Calling provisions

68. Plaintiff Boger incorporates the allegations from all previous paragraphs as if fully set forth herein.

69. The foregoing acts and omissions of the Defendants constitute violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

70. As a result of the Defendants violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B). The Court may award up to $1,500 if the violation was found to be "knowing or willful". *Id.*

71. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

## Count Two:
## Violation of the Maryland Telephone Consumer Protection Act

72.     Plaintiff Boger incorporates the allegations from all previous paragraphs as if fully set forth herein.

73.     The foregoing acts and omissions of the Defendants constitute violations of the Maryland Telephone Consumer Protection Act, Md. Code Ann. Com. Law §§ 14-3201, *et seq.*, ("Maryland TCPA") which prohibits a person from violating the TCPA. Here, as alleged above, the Defendants violated the TCPA by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

74.     As a result of the Defendants violations of the Maryland TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to Md. Code Ann. Com. Law § 14-3202(b)(2)(i) as well as their attorneys fees pursuant to Md. Code Ann. Com. Law § 14-3202(b)(1).

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A.     Certification of the proposed Class;

B.     Appointment of Plaintiff as representative of the Class;

C.     Appointment of the undersigned counsel as counsel for the Class;

D.     A declaration that Defendants' actions complained of herein violate the TCPA;

E.     An order enjoining Defendants from making automated or pre-recorded calls;

F.     An award to Plaintiff and the Class for damages, as allowed by law;

G.  Attorney's Fees as allowed by the Maryland Telephone Consumer Protection Act;

H.  Leave to amend this Complaint to conform to the evidence presented at trial; and

I.  Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims asserted in this complaint that are so triable.**

PLAINTIFF,
By his attorneys

_____/s/_____
Stephen H. Ring, Esq. (Atty No. 00405)
STEPHEN H. RING, PC
9901 Belward Campus Drive, Suite 175
Rockville, Maryland 20850
(301) 563-9249
shr@ringlaw.us


\_\_\_\_/s/_____
Anthony Paronich, Esq.
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(617) 680-0049
ted@broderick-law.com
Subject to *Pro Hac Vice*